1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

LONGBRIDGE FINANCIAL, LLC, a
Delaware limited liability company,

                                    Plaintiff,

        v.

MUTUAL OF OMAHA MORTGAGE,
INC., a Delaware corporation; REVIEW
COUNSEL LLC, a California limited
liability company; ADVISORY
INSTITUTE, LLC, a Delaware limited
liability company; and DOES 1 through
100, inclusive,

                                    Defendants.

Case No.:  24-cv-1730-DMS-VET

**ORDER GRANTING IN PART AND
DENYING IN PART MOTION FOR
PRELIMINARY INJUNCTION**

        Pending before the Court is Plaintiff Longbridge Financial, LLC's ("Longbridge")
Motion for Preliminary Injunction (Motion, ECF No. 16).  Defendants Mutual of Omaha
Mortgage, Inc. ("Mutual of Omaha") and Review Counsel LLC ("Review Counsel") filed
a response in opposition (Mutual and Review Counsel Opp'n, ECF No. 29).  Defendant
Advisory Institute, LLC ("Advisory") joined in Mutual of Omaha's opposition and filed
its own response in opposition.  (Advisory Opp'n, ECF No. 33). Longbridge filed a reply.
(Reply, ECF No. 36).  The matter is suitable for resolution without oral argument pursuant

to Civil Local Rule 7.1(d)(1).  (ECF No. 38).  For the following reasons, Longbridge's motion for preliminary injunction is granted in part and denied in part.

## I.    BACKGROUND

The Court incorporates the background section in its Order denying Advisory's motion to dismiss.  (ECF No. 31).  Since Longbridge filed its complaint, the record has developed and the relationship between the Defendants has become clearer.  On October 18, 2024, Review Counsel filed its corporate disclosure statement, stating that "Review Counsel LLC is wholly owned by Mutual of Omaha Mortgage, Inc."  (ECF No. 5, at 1). Mutual of Omaha confirmed this relationship in its opposition brief, acknowledging that it acquired Review Counsel in 2021.  (Lawrence Decl., ECF No. 29-2 ¶¶ 1–2).  Advisory was founded in January 2024 by William Trask, a former General Counsel of Mutual of Omaha, and is wholly owned by him.  (Trask Decl., ECF No. 33-2 ¶¶ 1–2).  Mutual of Omaha is Advisory's first and only advertising partner.  (*Id.* ¶ 4).  Review Counsel and Advisory's websites are similar because Review Counsel provided to Advisory its "templated design footprint" when Mr. Trask initially created Advisory's website.  (*Id.* ¶¶ 2, 7).

Review Counsel and Advisory recently made several changes to their websites to be consistent with these recent disclosures.  Review Counsel's disclosure banner at the top of its webpages, which previously stated that Review Counsel was "affiliated with" Mutual of Omaha, now states that it is "owned and operated by Mutual."  (Motion, at 12).  On January 9, 2025, Advisory updated its "Disclaimers" page with a "[l]ist of [a]dvertising [p]artners" that "have paid to advertise with [Defendant Advisory]"; a list that includes only Mutual of Omaha.  (Capata Decl., ECF No. 16-2, Ex. 20 at 97).  Advisory also added a disclosure to its landing page and "changed some references on its site [previously] describing it as 'independent,' to 'objective.'"  (Motion, at 12).  And both websites now omit any reference to Retirement Funding Solutions ("RFS"), which was previously listed as Defendants' number two recommended reverse mortgage provider.  (*Id.* at 11–12).

2

Despite these changes, Longbridge argues that the Review Counsel and Advisory websites are still false and misleading to consumers in at least three ways: (1) both websites falsely represent Defendants as independent organizations using objective ratings despite their financial relationship with Mutual of Omaha; (2) when recommending reverse mortgage providers, both websites use "arbitrary and statistically unsound criteria" that artificially boost Mutual of Omaha's score while deflating other providers' scores; and (3) to drive consumers to their websites, both Review Counsel and Advisory use false and misleading Google ads and landing pages that promise consumers information about "Top 3" reverse mortgage providers while actually only promoting Mutual of Omaha. (*Id.* at 12–13).

To cure these defects, Longbridge seeks removal of the following webpages currently on Defendants' websites. First, Defendants' landing pages and webpages highlighting Mutual of Omaha as Review Counsel and Advisory's "Featured" or "Top" reverse mortgage companies should be removed because the disclosures linking Defendants to Mutual of Omaha are either not "clear and conspicuous" or, in Advisory's case, "buried at the very bottom of a [different] long webpage that contains over 800 words of text."[1] (Motion, at 34–36). Second, Defendant's webpages presenting reverse mortgage ratings and criteria should be removed because they are based on arbitrary, non-objective, and non-neutral metrics.[2] (*Id.* at 21–26). Third, Review Counsel's webpage listing its reviewed reverse mortgage companies and corresponding "Review Counsel Ratings"

---

[1] *See Featured Reverse Mortgage Companies for 2025*, REV. COUNS., https://www.reviewcounsel.org/category/reverse-mortgages/; *Top Reverse Mortgage Companies for 2025*, ADVISORY INST., https://advisoryinstitute.org/reverse-mortgages/. These webpages are identical to Defendants' landing pages, which are the webpages consumers are redirected to after clicking on links provided by a Google search. (Motion, at 15–16 n.8).

[2] *See Review Counsel Rating System*, REV. COUNS., https://www.reviewcounsel.org/ratings/?category=reverse-mortgage; *Ratings,* ADVISORY INST., https://advisoryinstitute.org/ratings/reverse-mortgages/.

should be removed because the ratings rely on the problematic metrics referenced above.[3]
Fourth, Review Counsel's individual review webpages of Mutual of Omaha and
Longbridge suffer from the same infirmities and should be removed because they also rely
on those problematic metrics.[4]  Further, the Longbridge review webpage was false and
deceptive because it was falsely listed as not being licensed in Hawaii and its four-star
consumer review is based entirely on a single consumer review.[5]  Longbridge also argues
Defendants should be precluded from republishing any of the content removed from their
websites since January 1, 2025, and "refrain from publishing any further false, misleading,
and deceptive advertisements, comparisons, reviews, and other content relating to reverse
mortgage product" on their websites during the pendency of this action.  (*Id.* at 2–3, 13).

Finally, after the present motion was filed, Review Counsel made further revisions.
For example, as of January 17, 2025, Review Counsel no longer uses the phrase "Top 3
Reverse Mortgages" in its sponsored Google ads and instead uses the phrases "2025's Best
Reverse Mortgages" and "Top U.S. Reverse Mortgage Companies Reviewed & Ranked."
(Lawrence Decl. ¶ 12).  It also removed the false statement that Longbridge was not
licensed in Hawaii.  (*Id.* ¶ 65).

## II.    LEGAL STANDARD

Injunctive relief is "an extraordinary remedy that may only be awarded upon a clear
showing that the plaintiff is entitled to such relief."  *Winter v. Nat'l Res. Def. Council, Inc.*,
555 U.S. 7, 22 (2008).  "A party seeking a preliminary injunction must meet one of two
variants of the same standard."  *All. for the Wild Rockies v. Pena*, 865 F.3d 1211, 1217 (9th
Cir. 2017).  Under the *Winter* standard, a party is entitled to a preliminary injunction if it

---

[3] *See Companies*, REV. COUNS., https://www.reviewcounsel.org/companies/?category=reverse-mortgages.

[4] *See Mutual of Omaha Mortgage*, REV. COUNS., https://www.reviewcounsel.org/company/mutual-of-omaha-mortgage/; *Longbridge Financial*, REV. COUNS., https://www.reviewcounsel.org/company/longbridge-financial/.

[5] The consumer review states "Yes, I understand" and rates Longbridge with four out of five stars. (Motion, at 33).

demonstrates (1) "that [it] is likely to succeed on the merits," (2) "that [it] is likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [its] favor," and (4) "that an injunction is in the public interest." *Winter*, 555 U.S. at 20. Under the Ninth Circuit's "'serious questions' test—a 'sliding scale' variant of the *Winter* test— . . . a party is entitled to a preliminary injunction if it demonstrates (1) 'serious questions going to the merits,' (2) a likelihood of irreparable injury,' (3) 'a balance of hardships that tips sharply towards the plaintiff,' and (4) 'the injunction is in the public interest.'" *Flathead-Lolo-Bitterroot Citizen Task Force v. Montana*, 98 F.4th 1180, 1190 (9th Cir. 2024) (quoting *All. for the Wild Rockies*, 865 F.3d at 1217). Under this "serious questions" test, "if a plaintiff can only show that there are serious questions going to the merits—a lesser showing than likelihood of success on the merits—then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *All. for the Wild Rockies*, 865 F.3d at 1217 (quoting *Shell Offshore, Inc. v. Greenpeace, Inc.*, 709 F.3d 1281, 1291 (9th Cir. 2013) (internal quotations omitted)). A plaintiff need only demonstrate success as to at least one of their claims to receive preliminary injunctive relief. *See Ozkay v. Equity Wave Lending, Inc.*, No. 20-cv-08263-JST, 2020 WL 12764953, at *2 (N.D. Cal. Nov. 25, 2020).

A district court may also consider "the parties' pleadings, declarations, affidavits, and exhibits submitted in support of and in opposition to the [motion for preliminary injunction]." *Cal. Rifle & Pistol Ass'n, Inc. v. Los Angeles Cnty. Sheriff's Dep't*, 745 F. Supp. 3d 1037, 1048 (C.D. Cal. 2024); *see also Johnson v. Couturier*, 572 F.3d 1067, 1083 (9th Cir. 2009) (finding district court did not abuse its discretion in granting a preliminary injunction when it relied on hearsay evidence and "the many exhibits, affidavits, declarations and factual allegations which have been submitted . . . by all parties . . . throughout the course of this litigation"). Any evidentiary issues "properly go to weight rather than admissibility." *Am. Hotel & Lodging Ass'n v. City of Los Angeles*, 119 F. Supp. 3d 1177, 1185 (C.D. Cal. 2015).

### III.    DISCUSSION

**A. Longbridge Seeks Mandatory Injunctive Relief**

"A prohibitory injunction prohibits a party from taking action and 'preserve[s] the status quo pending a determination of the action on the merits." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 878 (9th Cir. 2009) (quoting *Chalk v. U.S. Dist. Ct.*, 840 F.2d 701, 704 (9th Cir. 1988)).  "A mandatory injunction orders a responsible party to take action[,] . . .goes well beyond simply maintaining the status quo [p]endente lite[,] [and] is particularly disfavored." *Id.* at 879 (internal quotations omitted). "The status quo means 'the last, uncontested status which preceded the pending controversy.'" *N.D. ex rel. Parents Acting as Guardians Ad Litem v. State of Haw. Dep't of Educ.*, 600 F.3d 1104, 1112 n.6 (9th Cir. 2010) (quoting *Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879).

As the Ninth Circuit in *Hernandez v. Sessions* acknowledged, the distinction between the two types of injunction "lack[s] clear authority" and contains "inherent contradictions underlying the somewhat artificial legal construct that cause so many to question the inquiry" courts undertake when faced with this issue.  872 F.3d 976, 998 (9th Cir. 2017).  The consequences are significant as mandatory injunctions are subject to heightened scrutiny whereas prohibitory injunctions are evaluated under the traditional *Winter* test.  *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 879.

Longbridge raises two arguments in support of its contention that it requests prohibitory and not mandatory injunctive relief.  First, Longbridge attempts to distinguish its requested injunctive relief from the requested mandatory injunctive relief in *Garcia v. Google, Inc.* because that request was for the defendant to affirmatively "keep removing infringing content from the internet."  (Reply, at 19) (internal quotation omitted). However, the *Garcia* court defined the status quo preceding the litigation to be when the original infringing video was uploaded and available for public viewing on YouTube.  786 F.3d 733, 740 n.4 (9th Cir. 2015) (en banc).  Plaintiff sought an injunction requiring Google to remove that video and all future infringing videos.  *Id.* at 740.  Because that relief

6

"disrupted that status quo by ordering Google to remove the film," the *Garcia* court construed plaintiff's requested relief to be a mandatory injunction. *Id.*

Next, Longbridge argues that the Ninth Circuit in *Hernandez* held that "an order requiring a party to stop violating the law is prohibitory." (Reply, at 19). For support, Longbridge quotes the *Hernandez* court's citation to a treatise stating that "[a]n injunction is considered prohibitory when the thing complained of results from present and continuing affirmative acts and the injunction merely orders the defendant to refrain from doing those acts." Reply, at 18; *see also* 872 F.3d at 998.

The Court is not persuaded that *Hernandez* created such a bright-line-rule: The *Hernandez* court found the request that the government "conduct future initial [immigration] bond hearings in accordance with constitutional processes" to be prohibitory because "it prohibits the government from conducting new bond hearings under procedures that will likely result in unconstitutional detentions." 872 F.3d at 998. However, the court also indicated that a separate "requirement that the government [affirmatively] conduct new bond hearings for individuals detained on account of bonds set pursuant to the enjoined procedure . . . , may, however, under certain plausible interpretations be deemed mandatory." *Id.* Contrary to Longbridge's suggestion, *Hernandez* appears to be consistent with the Ninth Circuit's definition that mandatory injunctions require a party to "take action." *See Marlyn Nutraceuticals, Inc.*, 571 F.3d at 878.

Ultimately, the Court finds that Longbridge seeks mandatory injunctive relief because it requests an order requiring Defendants "to 'take action' . . . [and] goes well beyond simply maintaining the status quo *pendente lite*." *Garcia*, 786 F.3d at 740 (citations omitted). Since Longbridge seeks to prevent both reversion to the September 2024 iteration of Defendants' webpages and removal of current alleged false or misleading statements on these webpages, the Court applies the Ninth Circuit's heightened *Winter* standard for mandatory injunctions. *See Kennedy v. Meta Platforms, Inc.*, No. 24-cv-02869-WHO, 2024 WL 4031486, at *15 (N.D. Cal. Sept. 3, 2024) (noting that "[t]he Ninth Circuit has also implied that the 'serious questions' sliding scale inquiry for preliminary

7

injunctions does not apply to mandatory injunctions") (citing *Doe v. Snyder*, 28 F.4th 103, 111 n.4 (9th Cir. 2022)).

Under that standard, "[m]andatory injunctions . . . are permissible when 'extreme or very serious damage will result' that is not 'capable of compensation in damages.'" *Hernandez*, 872 F.3d at 999. Further, Longbridge's burden under the first *Winter* factor is "doubly demanding: . . . [Plaintiff] must establish that the law and facts *clearly favor* [its] position, not simply that [it] is likely to succeed." *Garcia*, 786 F.3d at 740.

**B. The Law and Facts Clearly Favor Some of Longbridge's Claims**

"The first factor under *Winter* is the most important." *Garcia*, 786 F.3d at 740. While Longbridge carries the burden of showing that the law and facts clearly favor its position, Longbridge is not required to prove its case in full at this stage but only such portions that enable it to obtain the injunctive relief it seeks. *See U. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981). Plaintiff alleges claims under the Lanham Act, California's Unfair Competition Law ("UCL"), and the Florida Deceptive and Unfair Trade Practices Trade Act ("FDUTPA"). For the following reasons, the Court finds that Plaintiff has carried its burden on each of these claims.

1. Lanham Act Claim

"Section 43(a) of the Lanham Act prohibits the use of false designations of origin and false representations in the advertising and sale of goods and services." *Cleary v. News Corp.*, 30 F.3d 1255, 1259 (9th Cir. 1994). The Act prohibits false advertising in the context of "commercial advertising or promotion," which is defined as "(1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public." *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1115 (9th Cir. 2021) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).

"The elements of a Lanham Act § 43(a) false advertising claim are: (1) a false statement of fact by the defendant in a commercial advertisement about its own or another's

8

product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

Defendants do not dispute that the alleged false advertising is "commercial advertising," nor do Defendants dispute that they caused the statements at issue to enter interstate commerce. Accordingly, the Court proceeds with the remaining elements of Plaintiff's false advertising Lanham Act claims: (1) false or misleading statements, (2) actual or likely deception, (3) materiality, and (4) injury.

### a. False or misleading statements

A plaintiff may "demonstrate falsity within the meaning of the Lanham Act" by showing that the at-issue statement is: (1) literally false on its face; (2) literally false by necessary implication; or (3) "literally true but likely to mislead or confuse consumers." *Southland Sod Farms*, 108 F.3d at 1139. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.* at 1140. "When a statement is literally false, the second and third elements of actual deception and material are presumed." *San Diego Cnty. Credit Union v. Citizens Equity First Credit Union*, 360 F. Supp. 3d 1039, 1052 (S.D. Cal. 2019). "[U]nder the false-by-necessary-implication doctrine, '[i]f the words or images, considered in context, necessarily imply a false message, the advertisement is literally false[,] and no extrinsic evidence of consumer confusion is required.'" *Suzie's Brewery Co. v. Anheuser-Busch Cos., LLC*, 519 F. Supp. 3d 839, 846 (D. Or. 2021) (quoting *Time Warner Cable, Inc. v. DIRECTV, Inc.*, 497 F.3d 144, 153 (2d Cir. 2007)). "[I]f the language or graphic is susceptible to more than one reasonable interpretation, the advertisement cannot be literally false." *Id.* (quoting *Time Warner Cable*, 497 F.3d at 158).

i.  Challenged past statements and behavior

As discussed, Plaintiff challenges some statements that have been amended or removed by Defendants since January 2025.  These past statements include (1) Review Counsel listing Longbridge as not being licensed in Hawaii; (2) Defendants' sponsored Google ads promising consumers information about "Top 3" reverse mortgage providers; (3) Review Counsel's banner disclosure stating that it was affiliated with Mutual of Omaha; and (4) Defendants' recommendation of RFS as a reverse mortgage provider.

Based on the present record, the Court finds that Longbridge has carried its burden to show that the law and facts clearly favor its position that some of these statements were "literally false" on their face.  The parties agree it was incorrect for Review Counsel to state that Longbridge was not licensed in Hawaii.  (Motion, at 31–32); (Mutual and Review Counsel Opp'n, at 21).  In addition, Review Counsel and Advisory's prior Google ads promising information about "Top 3" reverse mortgage providers are problematic because those ads redirected consumers to landing pages that highlighted Mutual of Omaha and RFS—which the parties agree are the same company—as two of the three "top" providers. (Dholakia Decl. ¶¶ 35–43).  Thus, the law and facts clearly favor Longbridge's claim that these statements were literally false on their face.

Further, Longbridge has established that the law and facts clearly favor its claim that Review Counsel and Advisory's spotlighting and recommending of Mutual of Omaha and RFS as two separate reverse mortgage providers was literally false by necessary implication.  The September 2024 versions of Defendants' websites listed Mutual of Omaha and RFS side-by-side while describing them as "some of our notable reverse mortgage loan partners" and "industry leaders."  (Complaint ¶¶ 28, 48).  Defendants also described both as having "[e]xcellent customer service" and "[g]reat borrower reviews from independent sites[,]" (*id.*), and listed a different phone number for each "provider." (*Id.*).  Viewed in context, these representations imply that Mutual of Omaha and RFS are separate and independent entities.  Because that is not the case, Longbridge has met its

burden to show that Defendants' recommendations and references to RFS on the September 2024 versions of their websites are false by implication.

The Court also finds Longbridge has carried its burden to show that the other past statements, while not literally false, would likely mislead or confuse consumers. Review Counsel's previous banner disclosure, stating that Review Counsel was "affiliated with" Mutual of Omaha and RFS, was literally true but obfuscated Mutual of Omaha's actual control and ownership of Review Counsel. (*Id.* ¶ 92). Accordingly, Longbridge has met its burden to show the law and facts clearly support its claim that Review Counsel's old banner disclosure would likely mislead or confuse consumers.

### ii. Challenged present statements and behavior

Longbridge also challenges certain webpages currently on Review Counsel and Advisory websites. First, Longbridge argues that Review Counsel and Advisory's landing pages and webpages highlighting Mutual of Omaha as their "Featured" or "Top" reverse mortgage companies are false and misleading because their disclosures are insufficient and too far removed to reveal the true nature of Mutual of Omaha's ownership and control of Review Counsel and Advisory. Next, Longbridge challenges Review Counsel and Advisory's webpages describing and applying their rating criteria to reverse mortgage providers because the ratings and criteria are "unsound, arbitrary, deceptive and misleading." (Motion, at 22). Finally, Longbridge argues that Review Counsel's individual review webpages on Mutual of Omaha and Longbridge should be removed because the review pages rely on the same problematic rating criteria as the other webpages. These arguments are addressed in turn.

### 1. Disclosures

Review Counsel has two sets of disclosures. At the top of every Review Counsel webpage is an evergreen banner stating that "Review Counsel is owned and operated by Mutual of Omaha Mortgage." On Review Counsel's landing page there is a short-form disclosure consumers can access by clicking on a bolded "Disclosure" link at the top of the landing page. Clicking on that link prompts a disclosure pop-up at the center of the

webpage which reiterates the banner disclosure's message and contains a hyperlink to Review Counsel's full disclosures.  (Dholakia Decl. ¶ 97).

Longbridge's primary gripe with the banner disclosure is that it is not sufficiently "clear and conspicuous" to consumers.  (Motion, at 24–36).[6]  Review Counsel disagrees, noting that "[t]he disclosure is prominently displayed at the top of the page" and "is set against an accented background."  (Mutual and Review Counsel Opp'n, at 25).  The Court agrees with Review Counsel that its current banner disclosure sufficiently explains its relationship with Mutual of Omaha and makes Review Counsel's landing page unlikely to mislead or confuse consumers.  The Court also agrees that Review Counsel's current short-form disclosure likely dispels consumer confusion since it reiterates the banner disclosure and links to Review Counsel's full-form disclosure.  Accordingly, as to the Review Counsel landing page, the Court finds that Longbridge has failed to meet its burden that the law and facts clearly favor this claim.

Advisory's disclosures present a slightly different story.  The September 2024 version of Advisory's landing page lacked a banner disclosure or a hyperlink to its disclosures at the top of the page. (Capata Decl., at 71).  Instead, the landing page contained two different disclosures towards the bottom of the webpage.  A consumer must first scroll nearly to the bottom of the landing page to find the disclosure, which states: "[Advisory's] platform receives advertising compensation from certain partners.  This financial relationship may influence the presence and positioning of companies on [Advisory's] website.  However, it does not affect the integrity of our evaluation process."  (Capata Decl., at 73).  A consumer must then scroll to the very bottom of the landing page and click on a "Disclaimer" hyperlink to reach Advisory's full-form disclaimers.  (*Id.*).  Once there, a consumer would view Advisory's general disclosures, stating that "Advisory sells

---

[6] Plaintiff also suggests that Review Counsel's disclosure violates the Federal Trade Commission's ("FTC") criteria for "clear and conspicuous" disclosures, which are disclosures that "[are] difficult to miss (*i.e.*, easily noticeable) and easily understandable by ordinary consumers."  Motion, at 36 (quoting 16 C.F.R. § 255.0(f)).

advertising opportunities to companies which may appear on this website," "[c]ompanies who wish to advertise on this website pay Advisory to be promoted or 'Featured' on the Categories pages," and many more disclosures. (Complaint, at 22). However, at no point did Advisory disclose that Mutual of Omaha paid it to advertise on Advisory's website. (*Id.*).

As of January 9, 2025, Advisory added two important disclosures to their landing page and their full-form disclaimer page. First, Advisory added a paragraph to the landing page stating that "[t]he companies listed on this page compensate us as advertising partners." (Capata Decl., at 75). Second, at the very bottom of Advisory's full-form disclaimer page, Advisory added a "[l]ist of [a]dvertising [p]artners" denoting Mutual of Omaha as the only company to "have paid to advertise with [Advisory]." (*Id.* at 97).

Nevertheless, Longbridge argues that the totality of these disclosures regarding Advisory and Mutual of Omaha's paid advertising relationship is "inadequate to dispel the consumer confusion generated by the site, and are false and deceptive on their own terms." (Motion, at 36). Advisory disagrees, contending that their current method of disclosures is not misleading. (Advisory Opp'n, at 7–8).

The Court finds that as to Advisory's post-January 9, 2025 method of disclosures, Longbridge has not met its burden to enjoin Advisory from publishing its landing page. While a consumer would have to read Advisory's long-form disclosure to understand the true nature of Mutual of Omaha's advertising relationship with Advisory, the other two disclosures on the landing page—albeit less informative—should spur a reasonable consumer to further inquire about Advisory's advertising partnerships. Advisory's long-form disclosure page ultimately provides that information.

Conversely, the Court finds Longbridge has met its burden to show that Advisory's September 2024 disclosures were misleading and confusing to consumers. That Mutual of Omaha is Advisory's only advertising partner is a vital piece of information consumers should know to avoid being misled or confused. The information is particularly salient because Mutual of Omaha is featured on Advisory's landing page and Advisory makes

24-cv-1730-DMS-VET

vague references to "[c]ompanies" who pay Advisory to be promoted or featured on its website without identifying those companies. (Complaint ¶ 55.b). Additional disclosures are needed to cure this deficiency. Accordingly, the law and facts clearly favor Longbridge's contention that Advisory's September 2024 landing page was misleading and confusing to consumers.

Finally, Longbridge argues that Defendants' ".org" domain names are misleading and confusing because they are primarily used for "nonprofit websites such as non-governmental organizations (NGOs), open-source projects, charitable organizations, and educational platforms." (Motion, at 30). To the extent Defendants' ".org" usage engenders a false sense of trust and objectivity, Defendants' current disclosures likely counteract it. Accordingly, the Court declines to require Defendants to remove their webpages on this ground.

## 2. Ratings Criteria and Ratings

The Court next considers Defendants' rating criteria and ratings of reverse mortgage providers. Longbridge contends that Review Counsel and Advisory's rating criteria are neither relevant nor meaningful to reverse mortgage consumers and instead are pretextually selected to make Mutual of Omaha Defendants' top rated reverse mortgage provider. (Motion, at 21–26).

Review Counsel's rating criteria is based on an average of a provider's numerical scores (ranging from 1 to 5) in six categories: (1) years in business; (2) number of products offered; (3) customer service availability; (4) state licensing/availability; (5) Better Business Bureau ("BBB") rating; and (6) availability of a mobile application. (Dholakia Decl ¶ 46). These ratings, according to Longbridge's expert, "are scientifically unsound, extremely misleading, and deceptive, and would have a high likelihood of misleading reasonable consumers who visit the Review Counsel website into forming incorrect evaluations of the mortgage providers." (*Id.* ¶ 47). Longbridge takes particular issue with the mobile application and customer service availability criteria, which Longbridge claims are arbitrary and not meaningful to reverse mortgage consumers. (*Id.* ¶ 48). Review

Counsel's scoring on these two categories produces a "wide divergence between the 4.8 [overall] score given to Mutual and the 3.7 score given to Longbridge." (Motion, at 23). Due to these rating criteria, Longbridge argues that it is false and misleading for Review Counsel to state on its website that "it offers objective ratings and rankings of reverse mortgage providers." (Motion, at 11).

The mobile application category is arbitrary, Longbridge argues, because Mutual of Omaha's own website makes no mention of any mobile application. (*Id.* at 23–24). Further, Longbridge argues that when Review Counsel featured RFS on its website, it gave RFS a score of 5/5 in the mobile application category even though RFS did not have its own independent mobile application. (Motion, at 24).

Longbridge also argues the customer service availability category is arbitrary because older consumers are likely to have more flexibility in their schedules due to retirement. (*Id.* at 24). Thus, it makes little sense for this rating category to be "sufficiently significant" to older consumers when choosing a reverse mortgage provider. (*Id.*). Review Counsel counters by noting how four other reverse mortgage provider-review sites (including Advisory's website) use this criterion. (Dubé Decl., ECF No. 29-3 ¶ 61).

Longbridge similarly contends that Advisory's ratings are "arbitrary, non-objective, and pretextual." (Motion, at 25). Advisory's ratings are based on six criteria: (1) Trustpilot Ratings; (2) Accreditation and Authorization; (3) Company Accessibility; (4) Educational Resources; (5) Loans Available; and (6) Financial Stability. (*Id.* at 25–26). Longbridge believes that Advisory does not actually use Trustpilot reviews as a criterion because Advisory does not include Longbridge as a rated provider even though Longbridge has a higher Trustpilot rating than Mutual of Omaha and because Advisory had incorrectly asserted that RFS was rated on Trustpilot. (*Id.* at 26). Longbridge also attacks Advisory's "Accreditation and Authorization" and "Company Accessibility" categories as being "statistically invalid." (Dholakia Decl. ¶ 82). As a result, Longbridge argues that Advisory's prior disclaimer stating that its propriety scoring system is "independent" is false and misleading. (Motion, at 29).

15

While Longbridge quibbles with Review Counsel and Advisory's selection and grading of their ratings categories, these matters may not be actionable under the Lanham Act. The Ninth Circuit's decision in *Ariix, LLC v. NutriSearch Corporation*, is instructive. 985 F.3d 1107. The plaintiff in *Ariix*, a nutritional supplement company, challenged the publisher of a nutritional supplement guide that "comparatively rate[d] supplement products using a five-star rating system based on 18 criteria." *Id.* at 1111. While the publisher "portray[ed] itself as an independent company that presents only objective data and scientific analyses to the public" and "claim[ed] on its website that it relies on scientific criteria to mathematically calculate the ratings," the *Ariix* plaintiff alleged that the ratings were rigged to favor a third-party competitor that "ha[d] a secret . . . and mutually lucrative relationship" with the publisher. *Id.* at 1111–12. The Ninth Circuit found that "the comparative five-star ratings in the Guide [were] not actionable" because "[t]hey [were] simply statements of opinion about the relative quality of various nutritional supplement products." *Id.* at 1121. Although the publisher represented that the star ratings "rel[ied] on scientific and objective criteria," the *Ariix* court noted that "there [was] an inherently subjective element in deciding which scientific and objective criteria to consider." *Id.* To illustrate, the *Ariix* court referred to how publications ranking colleges and law schools "purportedly rely on objective criteria (*e.g.*, acceptance rates, test scores, class size, endowment), but selecting those criteria involves subjective decision-making." *Id.*

The Court finds that *Ariix* is on all fours with Longbridge's Lanham Act objectivity claims against Review Counsel and Advisory's chosen rating criteria and how they score those criteria. As discussed, Longbridge contends that both Review Counsel and Advisory's selection and scoring of criteria are at odds with their representations of objectivity. Longbridge does not argue—aside from Review Counsel's prior incorrect statement that RFS had a mobile application, and Advisory's incorrect statement that RFS was rated on Trustpilot—that Defendants incorrectly described any reverse mortgage provider's capabilities within its selected criteria. *Ariix* instructs that such challenges to the selection of purportedly objective criteria which are summarized by a five-star rating

are not actionable under the Lanham Act. 985 F.3d at 1121. Accordingly, the Court finds that the law and facts are not clearly in Longbridge's favor on this ground and declines to enjoin Review Counsel and Advisory from publishing webpages that rely on reverse mortgage criteria and ratings.

However, *Ariix* does not foreclose Longbridge's claim that Advisory's prior statements that its reviews and scores "are based upon Advisory's own independent propriety scoring system" and that advertisement compensation does not influence Advisory's reviews, scores, or ratings of providers, were false and misleading. (Motion, at 28–29). A claim of independence "is a statement of fact that can be proven true or false" and is thus actionable under the Lanham Act. *Ariix*, 985 F.3d at 1121–22. The present record—that Advisory was founded and owned by Mutual of Omaha's former General Counsel, the Advisory website was designed using a "templated design footprint" provided by Review Counsel, and Advisory's sole advertising partner is Mutual of Omaha—challenges Advisory's claim that its propriety scoring system was independent. However, despite these ties, Advisory maintains it is independent from Mutual of Omaha. (Advisory Opp'n, at 11). While Longbridge raises serious questions regarding Advisory's independence, the Court does not find that the present record clearly supports Longbridge's contention that Advisory's claims of independence are false and misleading to consumers.

Next, the Court turns to Longbridge's complaints regarding Review Counsel's current individual review webpages for Mutual of Omaha and Longbridge. Longbridge contends that Longbridge's review webpage contains a graphic that shows Review Counsel's "3.7" rating for Longbridge alongside another four-star rating and a button to "Read Reviews." (Motion, at 32–33). Clicking that button brings a consumer to Review Counsel's consumer review section for Longbridge. (*Id.* at 33). There, a consumer would see that Longbridge's four-star rating is based entirely on a single consumer review stating "Yes. I understand." (*Id.*). This overall set-up is misleading, according to Longbridge, because it "falsely suggests that Longbridge's consumer reviews somehow justify this low score." (*Id.*). Further, the single consumer review is misleading because "[n]either the

source of this review, nor the methodology used to validate its authenticity, is explained on the page . . . [a]nd[] using a single customer review of questionable provenance to justify a starred rating for Longbridge is unambiguously arbitrary, non-objective, and statistically invalid." (*Id.* at 33–34). Review Counsel's individual review page for Mutual of Omaha is also allegedly misleading by comparison because its consumer review page is filled with 480 individual reviews that form an overall 4.8-star consumer review score. (*Id.*).

Longbridge has not met its heightened burden on this claim. Longbridge's first argument that the side-by-side juxtaposition between its 3.7 overall score and four-star consumer review score causes consumers to believe that the 3.7 score is influenced by consumer reviews is not persuasive. A reasonable consumer should notice that the 3.7 score and the four-star score are distinct since they are side-by-side and numerically different. Additionally, if a reasonable consumer were to click on "Read Reviews" to read the four-star consumer review, they would likely conclude it was not relevant to evaluating Longbridge's services since the consumer review is nonsensical—stating, "Yes, I understand." *See* Motion, at 33.

Further, Longbridge's complaints regarding Longbridge and Mutual of Omaha's individual consumer ratings on Review Counsel's website are unlikely to form a valid basis for a Lanham Act claim. False advertising claims based upon the content of allegedly misleading but ultimately independent third-party consumer reviews are nonactionable statements of opinion. *See BHRS Grp., LLC v. Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 801 & n.22 (C.D. Cal. 2021) (noting false advertising claim based upon the content of allegedly misleading but independent third-party reviews were "classic statements of opinion, and, therefore, . . . not actionable" under the Lanham Act). There is no suggestion that Review Counsel authored or influenced any of the consumer reviews on its webpages. Rather, Longbridge blames Review Counsel for not identifying the source of the reviews or explaining the methodology used to validate its authenticity. (Motion, at 33). Because the subject consumer reviews were authored by independent third-parties, Longbridge's claim under the Lanham Act faces significant headwinds. Accordingly, the Court finds

that Longbridge fails to meet its burden that the law and fact clearly favor its position that Review Counsel's individual review webpages are misleading to consumers.

### b. Actual or likely deception

To prove the second element of a Lanham Act false advertising claim, Plaintiff must show that Defendants' statements "actually deceived or has the tendency to deceive a substantial segment of its audience." *Southland Sod Farms*, 108 F.3d at 1139. As discussed, literally false statements are presumed to tend to deceive. *See San Diego Cnty. Credit Union*, 360 F. Supp. at 1052. Defendants' past statements claiming Longbridge was not licensed in Hawaii, sponsored ads promising information about "Top 3" reverse mortgage providers, and spotlighting and recommending RFS as a separate reverse mortgage provider are thus presumed to tend to deceive.

In addition, Longbridge relies on the declaration of its expert, Utpal Dholakia, and several screenshots of Review Counsel's website, to support its contention that Review Counsel's old banner disclaimer tended to deceive consumers. In response, Review Counsel claims that Mutual of Omaha consumers are "savvy," cites academic research "showing that older consumers are more skeptical of online reviews and more financially literate than younger consumers," and notes that "federal regulations require[] applicants for federally-insured reverse mortgages to first meet with a counselor from a government-approved counseling agency." (Mutual and Review Counsel Opp'n, at 31). The Court agrees with Longbridge that Review Counsel's old banner disclosure tended to deceive consumers to believe that Review Counsel was not owned and operated by Mutual of Omaha. The original text of the banner disclosure, namely the first clause that "Review Counsel is affiliated with Mutual of Omaha Mortgage and Retirement Funding Solutions," does little to explain the actual relationship between Review Counsel and Mutual of Omaha. Review Counsel's counterpoints are too generalized to explain how its old banner disclosure did not tend to deceive—particularly given the reality that Mutual of Omaha owns and operates Review Counsel. Accordingly, the Court finds that Longbridge has met its burden that the old banner disclosure tended to deceive consumers.

Longbridge also claims Advisory's September 2024 disclaimers tended to deceive consumers. Those disclosures failed to explain that Mutual of Omaha was Advisory's only advertising partner. As discussed, this fact was important to disclose since Advisory was founded by Mutual of Omaha's former General Counsel, Advisory borrowed Review Counsel's design template, and Advisory's disclaimers referred to "companies" that paid to advertise on its website. There was no way for a consumer to learn from Advisory's website that Mutual of Omaha was Advisory's only advertising partner. Accordingly, the Court agrees with Longbridge that the law and facts clearly favor its position that Advisory's earlier disclaimers tended to deceive consumers.

### c. Materiality

To satisfy the materiality requirement, Longbridge must show that the deception was "material, in that it is likely to influence the purchasing decision." *Southland Sod Farms*, 108 F.3d at 1139. As discussed, statements found to be literally false may be presumed to be material to a consumer's purchasing decision. *See San Diego Cnty. Credit Union*, 360 F. Supp. 3d at 1052. The Court therefore presumes that Defendants' literally false statements were material to consumers' purchasing decisions.

As with consumer deception, direct evidence of a statement's impact on consumers is helpful but is not necessary to determine materiality. *See ITEX Corp.*, 90 F. Supp. 3d at 1172–73. Further, "'[m]ateriality can be shown where defendants misrepresent an inherent quality or characteristic' of a product." *In-N-Out Burgers v. Smashburger IP Holder LLC*, No. SACV 17-1474 JVS(DFMx), 2019 WL 1431904, at *7 (C.D. Cal. Feb. 6, 2019) (quoting *Broadcom Corp. v. SiRF Tech., Inc.*, No. SACV 08-546 JVS (MLGx), 2009 WL 10672287, at *4 (C.D. Cal. Oct. 8, 2009)).

With respect to the old banner disclosure, while the Review Counsel-arm of Mutual of Omaha's business does not itself provide reverse mortgages, its primary purposes are (1) promoting the reverse mortgage providers that pay to advertise on the Review Mortgage website and (2) offering its own reviews and scores of financial service providers. (Mutual and Review Counsel Opp'n, at 9). The banner disclosure is particularly important since it

is the first disclosure a consumer would see when using the website, and Mutual of Omaha owns Review Counsel and is promoted, reviewed, and scored on the website. The more the banner discloses, the more consumers can rely on Review Counsel's recommendations to select a reverse mortgage provider. Thus, the old banner disclosure is material because it misrepresents an inherent quality or characteristic of Review Counsel's services— whether a consumer can trust Review Counsel's reviews and recommendations.

Review Counsel's arguments to the contrary are unpersuasive. It argues that any impact to consumers is mitigated by the "savviness" of its consumers or the helpfulness of mandatory counseling from a government-approved agency. (Mutual and Review Counsel Opp'n, at 32). However, the evidence put forward by Review Counsel is too generalized and fails to rebut Longbridge's contention that Defendants' false statements effected consumers' purchasing decisions. Further, the mandatory counseling occurs well after consumers are exposed to and potentially influenced by Defendants' false and misleading statements. It is also contested whether these counselors are allowed to redirect consumers from their chosen reverse mortgage provider. (Reply, at 17 n.11). Accordingly, Longbridge has met its burden to show that Defendants' false and misleading statements were material.

The deceptive nature of Advisory's September 2024 disclaimers is material for similar reasons. Advisory claims its website's purpose is to provide general information to consumers, presumably information about the products, services, and companies featured on its website. (Trask Decl. ¶ 15). Consumers are more likely to use Advisory's website if they can trust and rely on the information Advisory chooses to present. Failing to disclose the sole source of income for Advisory, when that source is a reverse mortgage provider highlighted on Advisory's website, could certainly influence consumers' decisions to use Advisory's website and choose a reverse mortgage provider. Accordingly, Longbridge has met its burden to show that Advisory's September 2024 disclosures were material.

### d. Actual or Likely Injury

To satisfy the final element of a Lanham Act false advertising claim, Longbridge must show that it "has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products." *Southland Sod Farms*, 108 F.3d at 1139. "[D]iversion of sales to a direct competitor may be the paradigmatic direct injury from false advertising." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 138 (2014). "As such, courts have applied a presumption of injury 'when defendant and plaintiff are direct competitors and defendant's misrepresentation has a tendency to mislead consumers.'" *Intuit Inc. v. HRB Tax Grp., Inc.*, No. 24-cv-00253-BLF, 2024 WL 5320392, at *9 (N.D. Cal. Dec. 3, 2024) (quoting *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 826 (9th Cir. 2011)).

Longbridge seeks both injunctive relief and damages. (Complaint, at 38). "[A] competitor need not prove injury when suing to enjoin conduct that violates section 43(a)." *Southland Sod Farms*, 108 F.3d at 1145 (quoting *Harper House, Inc. v. Thomas Nelson, Inc.*, 889 F.2d 197, 210 (9th Cir. 1989)). Accordingly, Longbridge need not prove injury for injunctive relief. Regarding damages, the Court presumes Longbridge has suffered injury. Because Longbridge has shown that Defendants' literally false and misleading statements tend to mislead consumers, it has met its burden of establishing that it has been or is likely to be injured because of these statements.

### 2. State Law Claims

The parties agree that success on a Lanham Act false advertising claim paves the way for success on UCL and FDUTPA claims. Mutual and Review Counsel Opp'n, at 33; *Walker & Zanger, Inc. v. Paragon Indus.*, 549 F. Supp. 2d 1168, 1182 ("[C]laims of unfair competition and false advertising under [the UCL] . . . are 'substantially congruent' to claims made under the Lanham Act." (quoting *Cleary*, 30 F.3d at 1262–63); *In re NJOY, Inc. Consumer Class Action Litig.*, 120 F. Supp. 3d 1050, 1123 (C.D. Cal. 2015) ("[T]he factors required to prove claims under the UCL . . . and FDUTPA are essentially

indistinguishable.").  Accordingly, the Court finds that Longbridge has met its burden as to its state law claims under the UCL and FDUTPA.[7]

### C. Irreparable Harm

Under the second *Winter* factor, the Court considers whether Longbridge "is likely to suffer irreparable harm in the absence of preliminary relief." 555 U.S. at 20.  A plaintiff seeking an injunction under the Lanham Act is "entitled to a rebuttable presumption of irreparable harm . . . upon a finding of a likelihood of success on the merits." 15 U.S.C. § 1116.  The presumption applies because, as discussed above, Longbridge has shown more than likely success as to some of its Lanham Act claims.

Defendants offer five arguments to rebut the presumption of irreparable harm: (1) Longbridge provides no evidence that it has been harmed; (2) Longbridge has in fact not been harmed; (3) Longbridge has not shown that any harm it has suffered cannot be remedied by monetary damages; (4) Longbridge has unduly delayed in seeking injunctive relief; and (5) any harm has been mooted by Defendants' January 2025 corrective actions. Mutual and Review Counsel Opp'n, at 34–41; Advisory Opp'n, at 17–18.  These arguments are addressed in turn.

As a threshold matter, Defendants cannot flip the burden by asserting Longbridge has not provided evidence of harm.  Because a presumption of harm exists, either Defendants must provide evidence that Longbridge did not suffer irreparable harm or Longbridge must concede the absence of such harm.  *See Robinson v. Best Price Distributors, LLC*, No. 21-cv-06689-RGK-JC, 2022 WL 3013131, at *3–4 (C.D. Cal. June 14, 2022) (finding defendants successfully rebutted the presumption of irreparable harm where defendants asserted and plaintiffs conceded that defendants had stopped selling

---

[7] Because Longbridge need only demonstrate success as to one of its claims to receive injunctive relief, *Ozkay*, 2020 WL 12764953, at *2, the Court declines to consider whether Longbridge has met its burden under its UCL claim predicated on violation of the Real Estate Settlement Procedures Act.  The Court also declines to consider Advisory's argument that the FDUTPA requires proof that consumers were or were likely harmed by Defendants' conduct since the Court previously held that FDUTPA does not require proof of reliance by or harm to consumers.  (ECF No. 31, at 8).

the at-issue product).  Accordingly, this argument alone fails to rebut the presumption of irreparable harm.

Review Counsel next argues that Longbridge has not been harmed because its reverse mortgage business is presently healthy and growing.  (Mutual and Review Counsel Opp'n, at 35).  However, Longbridge's business might grow even if Defendants are steering customers away or unfairly disparaging Longbridge's services.  Longbridge may have been irreparably harmed by stymied growth due to Defendants' actions.

Review Counsel also points an accusatory finger at Longbridge for paying for favorable placement and ratings on competing comparison/review websites.  (*Id.* at 36–38).  However, Longbridge's alleged advertising relationship with these websites is different from Mutual of Omaha's relationship with Review Counsel and Advisory.  For example, Review Counsel does not contend that Longbridge owns and operates any advertising website.  Nor does Review Counsel contend that Longbridge is the sole advertiser of a review website that was founded by a former Longbridge employee.  Thus, Review Counsel's invitation to infer that Longbridge has not been harmed by Defendants' actions is unpersuasive.

Review Counsel also argues that the alleged harm to Longbridge, i.e. reduced revenues and redirected market share, is pecuniary and thus not irreparable.  (*Id.* at 39).  However, "[e]vidence of threatened loss of prospective customers or goodwill certainly supports a finding of the possibility of irreparable harm." *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001).  Further, "injury to market share can constitute irreparable harm." *Monster Energy Co. v. Vital Pharms., Inc.*, No. EDCV 18-1882 JGB (SHKx), 2023 WL 2918724, at *4 (C.D. Cal. Apr. 12, 2023).  As discussed, the purposes of Defendants' websites are to promote the financial services of their paid advertising partners and to provide ratings and reviews of select financial service companies.  (*Id.* at 9); (Advisory Opp'n, at 7).  A necessary consequence of Defendants' websites, assuming they are successful, is the loss of customers to providers like Longbridge to providers that pay for promotion under questionable circumstances.  Further,

Longbridge's expert suggests—though Review Counsel's expert disputes—that rating and review sites like Defendants' could negatively affect Longbridge's prospective customer-base and goodwill. (Dholakia Decl. ¶ 107); (Dubé Decl. ¶¶ 73–84). Longbridge has presented sufficient evidence of threatened loss of prospective customers and goodwill.

Review Counsel next argues that Longbridge's delay of more than sixteen months in seeking preliminary injunction rebuts the presumption of irreparable harm. (Mutual and Review Counsel Opp'n, at 38). "Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune, Inc. v. Chronicle Publ'g Co., Inc.*, 762 F.2d 1374, 1377 (9th Cir. 1985). However, "'delay is but a single factor to consider in evaluating irreparable injury'; indeed, 'courts are loath to withhold relief *solely on that ground*.'" *Cuviello v. City of Vallejo*, 944 F.3d 816, 833 (9th Cir. 2019) (quoting *Arc of California v. Douglas*, 757 F.3d 975, 990 (9th Cir. 2014)). Longbridge apparently admits it discovered Review Counsel's false advertising in April 2023, when Longbridge submitted an anonymous complaint to Mutual of Omaha about the Review Counsel website. Reply, at 22; Pistone Decl. ¶ 30. Longbridge then raised formal complaints to relevant trade associations and state banking regulators between July 2023 and January 2024 before eventually filing the subject action in September 2024. Pistone Decl. ¶¶ 32–34.

"Although a plaintiff's failure to seek judicial protection can imply 'the lack of need for speedy action,' such tardiness is not particularly probative in the context of ongoing, worsening injuries." *Arc of California*, 757 F.3d at 990 (quoting *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984)) (internal citations omitted). Here, the record reflects that the magnitude of Longbridge's "potential harm [became] apparent gradually, undermining any inference that [Longbridge] was 'sleeping on its rights.'" *Id.* at 990–91 (quoting *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959)). Longbridge attempted to resolve its claims extrajudicially by raising complaints to Review Counsel and relevant associations during the delay period. The potential for harm increased during this period with Advisory's founding in January 2024. (Trask Decl. ¶ 2).

25

While Longbridge waited an additional eight months to file the action, the delay is not dispositive under these circumstances. *See Cuviello*, 944 F.3d 816 at 833.

Finally, Defendants argue that any harm to Longbridge has been mooted because Defendants voluntarily removed any alleged false and misleading statements on their websites. "Voluntarily ceasing the conduct, however, does not necessarily moot the need for injunctive relief . . . 'if there is a substantial possibility that the act sought to be enjoined may be repeated.'" *Novation Sols., Inc. v. Issuance Inc.*, No. 23-cv-00696-WLH-KSx, 2023 WL 6373871, at *12 n.5 (C.D. Cal. Aug. 16, 2023) (quoting *Cherokee Inc. v. Wilson Sporting Goods Co.*, No. 15-04023 BRO (Ex), 2015 WL 3930041, at *3 (C.D. Cal. June 25, 2015)) (internal citation omitted). That is the case here. Accordingly, the Court finds that Defendants have failed to rebut the presumption of irreparable harm.

## D. Balance of Equities

Longbridge must "demonstrate that 'the balance of equities tips in [its] favor.'" *Hernandez*, 872 F.3d at 995 (quoting *Winter*, 555 U.S. at 20). Without an injunction, Longbridge will likely suffer irreparable harm, and Defendants likely will not suffer such harm as they have no "equitable interest in disseminating a false advertisement." *Suzie's Brewery Co.*, 519 F. Supp. 3d at 855. Longbridge has established that some of Defendants' past and current statements on their websites are false and misleading. The balance of equities therefore tips in favor of Longbridge.

## E. Public Interest

Finally, Longbridge "must demonstrate that the public interest favors granting the injunction 'in light of [its] *likely* consequences,' i.e., 'consequences [that are not] too remote, insubstantial, or speculative and [are] supported by evidence.'" *Hernandez*, 872 F.3d at 996 (quoting *Stormans v. Selecky*, 586 F.3d 1109, 1139 (9th Cir. 2009)). A "preliminary injunction is in the public interest whenever a plaintiff has established a reasonable likelihood of establishing that the defendant has engaged in false advertising in violation of the Lanham Act." *Suzie's Brewing Co.*, 519 F. Supp. 3d at 856. This is so because "the public has an interest in receiving accurate information and avoiding

confusion in the marketplace" and the Lanham Act was "intended to protect the consuming public and competitors from false and deceiving statements which a company chooses to utilize in advertising its goods or services." *Id.* (quoting *U-Haul Int'l, Inc. v. Jartran, Inc.*, 522 F. Supp. 1238, 1242 (D. Ariz. 1981), *aff'd*, 681 F.2d 1159 (9th Cir. 1982)).

As discussed, the law and facts clearly favor Longbridge's claims that Defendants violated the Lanham Act, UCL, and FDUTPA. The public interest factor therefore weighs in favor of preliminary injunction.

## IV.    SCOPE OF INJUNCTIVE RELIEF

Under Federal Rule of Civil Procedure 65(d), every order granting an injunction must "describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required." Fed. R. Civ. P. 65(d). "[A]n injunction must be narrowly tailored . . . to remedy only the specific harms shown by the plaintiff[], rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS*, 753 F.2d 719, 728 n.1 (9th Cir. 1983)). "Courts routinely enjoin defendants from continuing to advertise or promote their products using the specific claims found to be false." *Monster Energy Co.*, 2023 WL 2918724, at *9 (collecting cases). In light of the findings above, the Court issues the following injunction:

1. Defendants may not advertise that Longbridge is not licensed to issue loans in any state or territory where Longbridge is licensed;

2. Defendants may not simultaneously advertise to consumers on sponsored Google-search links that they provide information relating to "Top 3" reverse mortgage providers when Defendants' landing pages advertise fewer than three independent reverse mortgage providers;

3. Defendants may not advertise RFS on their websites as if RFS were an independent reverse mortgage provider originating its own loans. This includes, but is not limited to, representing that RFS has customer support phone lines, reviews, and ratings that are distinct from Mutual of Omaha;

4.  Review Counsel may not diminish the location, font, font size, font color, and language of its banner disclosure—which currently states that "Review Counsel is owned and operated by Mutual of Omaha Mortgage" and is present on every Review Counsel webpage; and

5.  Advisory may not diminish the location, font, font size, font color, and language of any disclosures or disclaimers on its website as of January 9, 2025.[8]

## V.    BOND

Under Federal Rule of Civil Procedure 65(c), a court "may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d at 1086 (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). "In particular, '[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct.'" *Id.* (quoting *Jorgensen*, 320 F.3d at 919).

Review Counsel requests a bond because an injunction requiring Defendants to shut down their websites or remove certain webpages would potentially inflict damages in the tens of millions of dollars. (Mutual and Review Counsel Opp'n, at 44). The injunctive relief here requires Defendants to do neither. All Defendants must do is maintain the

---

[8] These include: (1) a paragraph near the beginning of Advisory's landing page stating "[t]he companies listed on this page compensate us as advertising partners," (Capata Decl., at 75); (2) a sentence in italics at the near bottom of Advisory's landing page stating "[o]ur platform receives advertising compensation from certain partners. This financial relationship may influence the presence and positioning of companies on our website. However, it does not affect the integrity of our evaluation process," (*id.* at 80); and (3) a list of Advisory's advertising partners at the bottom of its "Disclaimer" webpage stating, "**List of Advertising Partners** The following companies have paid to advertise with us: Mutual of Omaha Mortgage." (*Id.* at 97).

24-cv-1730-DMS-VET

voluntary changes they previously made to their websites and ensure that the number of independent reverse mortgage providers Defendants advertise matches the number of independent providers on Defendants' landing pages.  Costs of compliance are likely minimal.  Accordingly, the Court declines to order the filing of a bond.

## VI.    CONCLUSION

Based on the foregoing, the Court grants in part and denies in part Longbridge's motion for preliminary injunction.

Dated:  May 13, 2025

Hon. Dana M. Sabraw
United States District Judge

24-cv-1730-DMS-VET